IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 14-cv-02468-REB-CBS

BRENDA T. BAKER,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, OFFICE OF ECONOMIC DEVELOPMENT,

      Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Blackburn, J.

      This matter is before me on **The City's Motion for Summary Judgment** [#27][1]
filed August 31, 2015.  The plaintiff filed a response [#30], and the defendant filed a
reply [#32].  I grant the motion.

## I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

      Summary judgment is proper when there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law.[2]  FED. R. CIV. P. 56(a);
***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue

---

[1]   "[#27]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

[2]   The issues raised by and inherent to the motions for summary judgment are fully briefed,
obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the
papers.

could be resolved in favor of either party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).

In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999) (abrogated on otr grounds, *Martinez v. Potter*, 347 F.3d 1208, 1210 - 1211 (10th Cir. 2003); *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014)).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999).

### III.  BACKGROUND

The plaintiff, Brenda Baker, worked for the Office of Economic Development of the City of Denver during the time relevant to this case.  She held the position of Business Development Associate II.  On February 26, 2013, Ms. Baker met with her supervisor, Liz Kissee, for an in-person performance review.  Ms. Kissee had completed her written performance review of Ms. Baker on or around February 6, 2013.  *Motion for summary judgment* [#27], Exhibit B-5 [#27-1], CM/ECF pp 16 - 21.  The performance review received final approval on February 7, 2013.  The written performance review was not changed between February 6 and February 26, 2013.  *Id.*, Exhibit B, ¶ 13.  Ms. Baker took issue with two sections of her performance review, where Ms. Kissee had given her "below expectations" rankings.  The two "below expectations" rankings were based on documented absences of Ms. Baker and accounted for eight per cent of her overall score on the performance review.  On the performance review, Ms. Baker was given an overall rank of "successful" and a score of 3.38 out of 5.0.  *Motion for summary judgment* [#27], Exhibit B-5 [#27-1] CM/ECF p. 21.  This ranking was higher than the 3.34 numerical ranking given to Ms. Baker by Ms. Kisee on the 2011 performance review of Ms. Baker.  *Motion for summary judgment* [#27], Exhibit B [#27-1], ¶ 18.  Based on her rank as "successful" on the 2012 performance review, Ms. Baker received a pay increase of 2.8 percent. *Id.*, ¶ 19.  The performance review did not affect adversely the job status of Ms. Baker, her compensation, or benefits.

On February 25, 2013, one day prior to the performance review meeting with Ms. Kissee, Ms. Baker told Ms. Kissee that a co-worker, Mark Dean, had fondled Ms. Baker's breasts in her cubicle on or around January 31, 2013.  Ms. Baker said Mr. Dean did this without her consent.  Ms. Baker reported that Mr. Dean assaulted her on two occasions on January 31, 2013.  The disclosure on February 25 was the first time Ms.

Baker reported the January 31, 2013, incident with Mr. Dean to her supervisor.  On February 25, Ms. Baker asked Ms. Kissee not to report the incident or do anything about it.  Ms. Kissee reported the allegations to her supervisor, Curt Pesicka, on about February 27, 2013, and left a voice mail with a Senior Human Resources Professional of the city, Ranea Taylor, the same day.

On February 27, 2013, Ms. Taylor met with Ms. Baker concerning the 2012 performance review.  Ms. Baker disclosed the conduct of Mr. Dean to Ms. Taylor during this meeting and asked Ms. Taylor not to disclose the allegations or take any action on them.  Ms. Taylor told Ms. Baker that the city was obligated to investigate her claims and asked Ms. Baker to put her allegations in writing.  On February 28, 2013, Ms. Kissee spoke to Ms. Taylor about the allegations of Ms. Baker.  On March 5, 2013, Ms. Baker submitted an e-mail concerning the misconduct of Mr. Dean.  In the e-mail, Ms. Baker said she did not believe she would have further issues with Mr. Dean, and she accepted his word that it will not happen again.  Ms. Baker claims she wrote the e-mail involuntarily while under direct pressure from Mr. Dean.

On March 13, 2013, the city placed Mr. Dean on investigatory leave.  The next day, the city began an internal investigation of the allegations against Mr. Dean.  In addition, the city reported the allegations to the Denver Police. The Denver Police conducted an investigation which led to the filing of criminal charges against Mr. Dean.  On July 30, 2013, he city terminated the employment of Mr. Dean.

Ms. Baker took leave under the Family and Medical Leave Act FMLA from March 14, 2013, to May 29, 2013.  On May 28, 2013, Ms. Baker reported the behavior of Mr. Dean to the Denver Police.   As of May 30, 2013, Ms. Baker's FMLA leave was exhausted.  On May 30, 2013, Ms. Baker sent a text message to her supervisor, Ms.

Kissee, saying Ms. Baker needed to take the day off with pay.  The city placed Ms. Baker on paid administrative leave from May 31, 2013, through June 10, 2013. According to the city, this was done so Ms. Baker would continue to receive compensation while the city conducted an interactive process to determine if a job accommodation was necessary to enable Ms. Baker to return to work.  The leave did not alter the employment status, benefits, or pay of Ms. Baker.

The city initiated the ADA interactive process with Ms. Baker.  Ms. Baker then told the city that she could perform the essential duties of her job, she would like to return to work, she did not want the interactive process to be initiated, and she did not need any accommodations at work.  *Motion for summary judgment* [#27], Exhibit A [#27-7] (Baker Deposition), 166:21 - 167:3.  Ms. Baker returned to work on June 11, 2013, in the position she held previously.

Ms. Baker contends she came to work on May 31, 2013, and worked about five hours.  That day, Ms. Baker contends, the Denver Police came to the office where Ms. Baker worked to interview city employees, presumably about Mr. Dean.  After the police left, Ms. Baker contends, Curt Pesicka, a city official, told Ms. Baker that she would be terminated immediately because the city did not think Ms. Baker could perform her duties because of her disabilities and health issues.  She claims this was done in retaliation for her pursuing her complaint against Mr. Dean with the police . *Response* [#30], pp. 8 - 9.   However, it is undisputed that Ms. Baker was put on paid administrative leave for the next ten days and then returned to her previous position. *Motion for summary judgment* [#27], Exhibit D-1 [#27-3], CM/ECF pp. 6-7 (letter concerning paid administrative leave).   If Mr. Pesicka made these statements, the statements proved to be untrue, and the city took no action consistent with these

5

statements.

In July 2013, after her return to work, Ms. Baker asked Curt Pesicka if she could move to a different cubicle because it was uncomfortable for her to work in the cubicle where the misconduct of Mr. Dean too place.  The city agreed to move Ms. Baker to a different cubicle.  In August 2013, the city began the process necessary to move Ms. Baker to a different cubicle.  However, the move was not completed until November 2013.

In 2011, the city purchased a Freedom Chair to accommodate the back and spinal injuries suffered previously by Ms. Baker.  Ms. Baker claims her Freedom Chair was broken during the assault by Mr. Dean on January 31, 2013.  According to Ms. Baker, on February 11, 2013, she told Ms Kissee that the Freedom Chair was broken.  According to Ms. Baker, in February 2013, she asked that the chair be replaced.  *Response* [#30], p. 18.  The chair was evaluated by a city employee in August 2014.  The employee reported that "further attention may be necessary to the adjustable aspects of the chair.  The headrest is suspect."  *Response* [#30], Exhibit 23.  In January 2015, a manufacturer's representative examined the chair at the request of the city.  The representative made two adjustments and reported that "(e)verything on the chair was in working order. . . ."  *Motion for summary judgment* [#27], Exhibit C-13 [#27-2], CM/ECF pp. 58 - 59.

In her complaint [#1], Ms. Baker asserts claims for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e.  She also asserts a claim of disability discrimination under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12102 - 12213.  In addition, she asserts claims of retaliation.  She alleges the defendant retaliated against her based on her objection to and reporting of

6

the unlawful sexual conduct of Mr. Dean, her objection to gender discrimination, and her complaints of retaliatory conduct by the defendant. *Complaint* [#1], ¶ 30. In addition, she alleges the defendant retaliated against her because she sought reasonable accommodation of her disability. *Complaint* [#1], ¶ 36.

## IV.  GENDER DISCRIMINATION - ADVERSE EMPLOYMENT ACTION

Ms. Baker has not cited direct evidence of unlawful discrimination based on her gender. Thus, her gender discrimination claim must be analyzed under the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See, e.g., Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (*McDonnell Douglas* burden shifting analysis applicable to gender discrimination claim). Under the *McDonnell Douglas* framework, Ms. Baker has the initial burden to establish a *prima facie* case of gender discrimination. To establish a *prima facie* case of gender discrimination, Ms. Baker must come forward with evidence that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was treated less favorably than others not in the protected class. *See, e.g., Turner*, 563 F.3d at 1142.

The defendant contends Ms. Baker has not come forward with evidence which shows she suffered an adverse employment action. If so, her gender discrimination claim fails. An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation omitted). Ms. Baker appears to claim the following actions by the defendant constitute adverse employment actions: (1) the 2012 performance review; (2) the alleged improper handling by the city

of her allegations against Mr. Dean; (3) the ten-day paid administrative leave with pay; and (4) the four-month interlude between her request to be transferred to another cubicle and the date the transfer was accomplished.

The performance review cannot properly be seen as an adverse employment action.   The review did not constitute a significant change in the employment status of Ms. Baker, such as hiring, firing, failing to promote, a reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Ms. Baker retained her position and received a pay increase based on the 2012 performance review.  The review does contain some negative commentary but a negative evaluation, without more, does not constitute adverse employment action.  A written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status. ***EEOC v. PVNF, L.L.C.***, 487 F.3d 790, 800 (10th Cir. 2007) ("written warning is an adverse employment action only if it effects a significant change in the plaintiff's employment status" by, for example, "affecting the likelihood that the plaintiff will be terminated, undermining the plaintiff's current position, or affecting the plaintiff's future employment opportunities").  The plaintiff has not presented any evidence that the negative comments in her performance review had any significant adverse effects on her employment status.

The actions of the city in response to the allegations of Ms. Baker against Mr. Dean also do not constitute an adverse employment action.  Ms. Baker reported the conduct of Mr. Dean to her supervisor, Ms. Kissee, on February 25, 2013.  Two days later, on February 27, 2013, Ms. Baker reported the conduct of Mr. Dean to a Human Resources Professional, Ranea Taylor.  Both Ms. Kissee and Ms. Taylor took action in response to the allegations, even though Ms. Baker, at the time of these conversations,

asked both Ms. Kissee and Ms. Taylor not to take action.  On March 5, 2013, Ms. Baker submitted an e-mail concerning the misconduct of Mr. Dean.  In the e-mail, Ms. Baker said she did not believe she would have further issues with Mr. Dean, and she accepted his word that it will not happen again.  Ms. Baker says she was forced to write this e-mail under direct pressure from Mr. Dean.  However, there is no evidence Ms. Kissee or any other supervisor of Ms. Baker knew that Ms. Baker claimed the e-mail was written involuntarily.

In spite of the e-mail and the requests of Ms. Baker that no action be taken concerning Mr. Dean, on March 13, 2013, the city placed Mr. Dean on investigatory leave.  The next day, the city began an internal investigation of the allegations against Mr. Dean made by Ms. Baker.  In addition, the city reported the allegations to the Denver Police.  The Denver Police conducted an investigation which led to criminal charges against Mr. Dean.  On July 30, 2013, he city terminated the employment of Mr. Dean.  None of these actions by the city constitutes an adverse employment action against Ms. Baker.

Ms. Baker complains that she had to work in the presence of Mr. Dean from the time she made her allegations, February 27, 2013, until Mr. Dean was placed on investigatory leave, March 13, 2013.  However, during this time period, Ms. Baker repeatedly requested that no action be taken based on her allegations.  In this context, the fact that the city did not place Mr. Dean on investigatory leave until March 13, 2013, does not constitute an adverse employment action.

The fact that the city put Ms. Baker on paid administrative leave from May 31, 2013, through June 10, 2013, does not constitute an adverse employment action.  Ms. Baker maintained her pay through this ten day period and returned to work in the same

position at the end of her paid administrative leave.  There is no dispute that Ms. Baker is disabled and the administrative leave had the explicit purpose of permitting an evaluation of the need for accommodation of Ms. Baker.  When Ms. Baker told the city she needed no accommodation, she was returned to her previous position with the same pay and benefits.

Several courts of appeal have held that placing an employee on paid administrative leave, especially when there is no presumption of termination, is not an adverse employment action.  ***Jones v. Southeastern Pa. Transp. Authority***, 796 F.3d 323, 326 (3rd Cir. 2015).  ***See also Joseph v. Leavitt***, 465 F.3d 87, 91 (2nd Cir.2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."); ***Peltier v. United States***, 388 F.3d 984, 988 (6th Cir.2004); ***Singletary v. Mo. Dep't of Corr.,*** 423 F.3d 886, 891–92 (8th Cir.2005); ***see also Von Gunten v. Maryland***, 243 F.3d 858, 869 (4th Cir.2001) (holding that "placing [an employee] on administrative leave with pay for a short time to allow investigation" is not an adverse action for retaliation purposes), ***abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White***, 548 U.S. 53, 60 (2006); ***Breaux v. City of Garland***, 205 F.3d 150, 158 (5th Cir.2000) (placement on paid administrative leave is not an adverse action for purposes of a First Amendment retaliation claim). ***But cf. Dahlia v. Rodriguez***, 735 F.3d 1060, 1078–79 (9th Cir.2013) (en banc) (placement on paid administrative leave can be an adverse action for purposes of a First Amendment retaliation claim).

The amount of time taken to move Ms. Baker to a new cubicle also does not constitute an adverse employment action.  Four months elapsed from the time Ms. Baker asked to be moved to the time when she actually was moved.  During this four

months, Ms. Baker suffered no significant change in her employment status, no reassignment with significantly different responsibilities, no decision causing a significant change in benefits, and no other action that changed her employment significantly.  Ms. Baker was dissatisfied with the work space she was assigned, and understandably so.  Still, the fact that it took four months to move her to a different work space does not constitute adverse employment action by the city.

Notably, in her response [#30] to the motion for summary judgment, Ms. Baker does not address the fundamental issue of adverse employment action.  She makes no argument that any of the actions discussed above constitute an adverse employment action.  She makes no argument and cites no evidence to support a contention that any other action taken by the city constitutes adverse employment action.  Absent some evidence that the city took an adverse employment action against Ms. Baker, I must conclude that Ms. Baker has not established a *prima facie* case of gender discrimination.  The motion for summary judgment must be granted as to the gender discrimination claim of Ms. Baker.

## V.  DISABILITY DISCRIMINATION

Ms. Baker has not cited direct evidence of unlawful discrimination based on her disability.  Thus, her claim of disability discrimination also must be analyzed under the burden-shifting analysis of *McDonnell Douglas*. *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 747 (10th Cir. 1999) (*McDonnell Douglas* burden shifting analysis applicable to disability discrimination claim).  To establish a prima facie case of discrimination under the ADA, Ms. Baker must show (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was discriminated against on the

basis of her disability. *McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir. 2001); 42 USCA § 12112.

### A.  Failure To Provide Reasonable Accommodation

In early June 2013, when the city initiated the ADA interactive process to determine what accommodation Ms. Baker may need, Ms. Baker explicitly told the city that she could perform her job without any accommodation of her disabilities.  If no accommodation is necessary, then disability discrimination cannot take the form of a failure by the employer to accommodate a disability. In her response [#30] to the motion for summary judgment, Ms. Baker relies on a note from one of her doctors, Morteza Khodaee, dated May 19, 2014.  In that note, Dr. Khodaee says: "Please move patient from work station (aisle of sexual assault) to assist with her PTSD treatment." *Response* [#30], Exhibit 33, p. 2.  She relies also on a July 27, 2013, letter from a psychologist which says: "Because of a medical condition, I am requesting that Brenda Baker be moved to a different desk." *Id.*, Exhibit 35.  Exhibit 36 to the response [#30] of Ms. Baker is a letter from Dr. Nease, dated August 20, 2013.  In that letter, Dr. Nease says Ms. Baker has been under his care and unable to work from August 12 through August 21, 2013.  Dr. Nease concludes his letter with: " On 8/22/13 she may return to work with no restrictions." *Id.*, Exhibit 36.  Dr. Nease does not state what condition he was treating or what condition prevented Ms. Baker from working from August 12 through August 21.

Ms. Baker contends the delay in completing her move from one cubicle to another cubicle constitutes disability discrimination.  Delay in providing a reasonable accommodation to a disabled employee can constitute unlawful disability discrimination. *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1262 - 1263 (10th Cir.

2001).  To determine if delay in providing a reasonable accommodation constitutes a failure to provide reasonable accommodation, the Tenth Circuit examines four factors, the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith.  *Id.*

In early June 2013, Ms. Baker stated she needed no accommodation.  The next indication that she requested an accommodation, in the form of being moved to a different cubicle, came in the July 27, 2013, note from a psychologist requesting that Ms. Baker be moved to a different desk because of a medical condition.  In this context, it is proper to measure the length of the delay from the first date on which the accommodation was requested, July 27, 2013, to the time when the move was completed on an unspecified date in November of 2013.  That is a period of four months.  To accomplish the move, another employee, Ms. Duran, was moved to the former cubicle of Mr. Dean.  Ms. Baker than was moved to the former cubicle of Ms. Duran.  Both cubicles required ergonomic modifications.  *Motion for summary judgment* [#27], Exhibits D, D-2 [#27-3].

The e-mail traffic concerning the move indicates that efforts to accomplish the move began in late June 2013 and continued into July.  *Response* [#30], Exhibit 34. Sheila Carpenter Barela, Economic Development Supervisor, made efforts to expedite the move when, as of October 31, 2013, the move had not been completed.  *Motion for summary judgment* [#27], Exhibit D-2 [#27-3], CM/ECF pp. 8 - 12.  These e-mails discuss the need to raise and lower desk surfaces, transfer phones, and transfer computers.  Other than the need to reconfigure cubicles and transfer phones and computers, the reasons for the delay in completing the move are not evidenced in the

record. There is no indication that an alternative accommodation was available or was offered to Ms. Baker during the delay.  There is no evidence that the city acted in bad faith in delaying the move.

Examining these facts and applying the standard established in *Selenke*, I find and conclude that the delay in moving Ms. Baker to a new cubicle does not constitute unlawful disability discrimination.  The city agreed to move Ms. Baker when the request was made.  Some effort was necessary to accomplish the move.  It is not clear why four months were needed to make the move.  There is no evidence that the city acted in bad faith.  Roughly similar periods of delay were at issue in *Selenke* and were found not to constitute disability discrimination.  248 F.3d 1249, 1262 - 1263.

In her response [#30], Ms. Baker contends "(o)ther non-disabled workers were promptly moved or transferred" while her move was delayed.  She cites her exhibit 28B, which purports to be a list of various Office of Economic Development workers and their moves at various times.  Even if I assume this document has been authenticated properly, I conclude that it does not provide evidence to show that Ms. Baker suffered a delay because of her disability.  Notably, the disability status of the employees on the list is not noted on the list.  Further, to the extent reasons for various moves are stated in this list, the reasons stated do not support the contention of Ms. Baker that she suffered a delay because of her disability.

### B.  Adverse Employment Action

A claim of disability discrimination can be based on evidence that an employer imposed an adverse employment action on the plaintiff because of the disability of the plaintiff.  As discussed in Section IV, above, Ms. Baker has not come forward with any evidence that she suffered an adverse employment action.  Her disability discrimination

claim is not supported by evidence of an adverse employment action.

### C.  Conclusion

Viewing the facts in the record in the light most favorable to Ms. Baker, the delay in moving her to a new cubicle does not support her claim of disability discrimination under the circumstances demonstrated by the evidence in the record.  Further, Ms. Baker has not shown any adverse employment action which would support her claim of disability discrimination.  Thus, the defendant is entitled to summary judgment on the disability discrimination claim of Ms. Baker.

## VI.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

In her response [#30], Ms. Baker argues also that she suffered disability discrimination because (1) the city failed to repair or replace her freedom chair; (2) on May 31, 2015, Curt Pesicka, a city official, told Ms. Baker that she would be terminated immediately because the city did not think Ms. Baker could perform her duties because of her disabilities and health issues; (3) her absences from work, necessitated by her disabilities, were used as the basis for the two "below expectations" ratings in her 2012 performance review.  In its reply [#32], the city notes that these claims were not asserted in the Charge of Discrimination filed by Ms. Baker with the Equal Employment Opportunity Commission.  *Motion for summary judgment* [#27], Exhibit G [#27-6], CM/ECF pp. 4 - 6 (EEOC Charge).  As the city notes, some of these contentions are not asserted in the complaint [#1] of Ms. Baker.

In her response [#30], Ms. Baker also attempts to assert a claim of hostile work environment based on the actions of Mr. Dean before he assaulted Ms. Baker.  She claims she "was subjected to a sexually hostile and abusive environment maintained by Denver, and that Denver Management was aware of it."  *Response* [#30], p. 14.   She

asserts this argument in support of her claim of gender discrimination.  Like the other

claims discussed in the preceding paragraph, this hostile work environment claim is not

contained in the EEOC charge of Ms. Baker.

In *National R.R. Passenger Corp. v. Morgan*, the United States Supreme Court

held that a plaintiff may not pursue a civil action based on a discrete act of employment

discrimination unless a timely charge of discrimination asserting that discrete act of

discrimination has been filed.  536 U.S. 101, 113 (2002).

> (U)nexhausted claims involving discrete employment actions are no longer
> viable.  *Morgan* abrogates the continuing violation doctrine as previously
> applied to claims of discriminatory or retaliatory actions by employers, and
> replaces it with the teaching that each discrete incident of such treatment
> constitutes is own unlawful employment practice for which administrative
> remedies must be exhausted.  Discrete acts such as termination, failure to
> promote, denial of transfer, or refusal to hire are easy to identify.

*Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). "Each incident of

discrimination and each retaliatory adverse employment decision constitutes a separate

actionable 'unlawful employment practice." *Id*.  "We lack jurisdiction to review Title VII

claims that are not part of a timely-filed EEOC charge."  *Annett v. University of*

*Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004).

Ms. Baker did not address in her EEOC Charge the three bases for her claim of

disability discrimination outlined above.  She did not assert in her EEOC Charge a

hostile work environment claim based on the actions of Mr. Dean.  Ms. Baker may not

now assert these claims in support of this civil action asserting claims of gender and

disability discrimination.

## VII.  RETALIATION

Ms. Baker asserts retaliation claims tied to both her claim of gender

discrimination and her claim of disability discrimination.  To establish a prima-facie case

of retaliation, a plaintiff must show: (1) that she engaged in protected opposition to discrimination; (2) that the employer took adverse action in response; (3) that a reasonable employee would have found the challenged adverse action to be materially adverse, and (4) that a causal connection existed between the protected activity and the materially adverse action. *See, e.g., Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir.2007).  An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  An action by an employer is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir.2010) (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted)).

In the context of a retaliation claim, courts "construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.' " *Reinhardt*, 595 F.3d at 1133 (*quoting Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)).  Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, but "a mere inconvenience or an alteration of job responsibilities will not suffice." *Annett v. Univ. of Kan.*, 371 F.3d at 1239 (internal quotation marks and citation omitted).

Ms. Baker alleges the following forms of retaliation in her EEOC Charge and in her complaint [#1]: (A) that her negative performance review on February 26, 2013, was in retaliation for her February 25, 2013, report of the sexual assaults by Mr. Dean; (B) that after Ms. Baker met with a human resources representative about her performance

review, her supervisor became very hostile toward Ms. Baker, in retaliation for her report of the sexual assaults by Mr. Dean; and (C) that after Ms. Baker reported the sexual assaults by Mr. Dean to the police, on May 28, 2013, Ms. Baker was placed on paid leave for ten days while an ADA interactive process was initiated, in retaliation for her report to the police.  In her response [#30], Ms. Baker cites many other facts which could be seen as an effort to assert new and different bases for her retaliation claim. Because the three retaliation claims enumerated above are the only claims asserted in the EEOC Charge and alleged in the complaint, I examine only these three properly preserved retaliation claims.  As discussed above, alleged forms of retaliation which are not addressed in the EEOC Charge may not be asserted in this lawsuit.

A.  Negative performance review on February 26, 2013,<br>in retaliation for the February 25, 2013, report of the sexual assaults by Mr. Dean.

It is undisputed that  Ms. Kissee, supervisor of Ms. Baker, had completed her written performance review of Ms. Baker on or around February 6, 2013.  The performance review received final approval on February 7, 2013.  The written performance review was not changed between February 6 and the meeting between Ms. Baker and Ms. Kissee on February 26, 2013.[3]  Ms. Baker reported the sexual assaults by Mr. Dean on February 25, 2013, and Ms. Kissee discussed the performance review with Ms. Baker the next day, February 26, 2013.

The performance review contains criticism of Ms. Baker which Ms. Baker claims was inserted in her performance review in retaliation for her report on February 25,

---

[3]  In her response [#30], Ms. Baker says she disputes the fact that her written performance review was completed on February 6, approved on February 7, and remained unchanged thereafter. *Response* [#30], p. 6, ¶ 6.  However, Ms. Baker cites no evidence to show there is a dispute about these simple facts.  The defendant submitted evidence which establishes the facts asserted by the defendant on these issues.  The evidence of the defendant is the only evidence in the record concerning these facts. Therefore, I view the facts established by the defendant on these points as undisputed.

2013.  The performance review, including the criticism of Ms. Baker, was completed on

February 6, 2013, 19 days before the report by Ms. Baker.  The performance review,

including the criticisms of Ms. Baker, were in place before Ms. Baker reported the

sexual assaults by Mr. Dean.  Given these undisputed facts, no reasonable finder of fact

could conclude that the criticisms of Ms. Baker were inserted in her performance review

in retaliation for the report by Ms. Baker, on February 25, 2013, of the sexual assaults

by Ms. Dean.

B.  Hostility by supervisor toward Ms. Baker after Ms. Baker met
with a human resources representatives about her performance review.

Ms. Baker says her supervisor became very hostile toward Ms. Baker after a

meeting between Ms. Baker and a human resources representative on February 27,

2013.  The next morning, Ms. Baker says, she overheard her supervisor on the phone

with human resources saying Ms. Baker was lying about the sexual assaults by Mr.

Dean.  Ms. Baker says Mr. Dean gave indications that he was aware of the allegations

by Ms. Baker.  Ms. Baker describes no other facts indicating the nature of the hostility or

how long it continued.  In her response [#30], Ms. Baker does not argue that this

supervisor hostility is, of itself, sufficient to support a retaliation claim.  She does note,

properly, that statements by decision makers may directly reflect a retaliatory attitude.

*Response* [#30], p. 19.  In other words, such statements may be evidence of retaliatory

motive even though the statements, by themselves, are not sufficient to support a

retaliation claim.

Given these scant facts, a reasonable fact finder could not find that the alleged

hostile attitude of the supervisor toward Ms. Baker "might have dissuaded a reasonable

worker from making or supporting a charge of discrimination."  ***Reinhardt v.***

19

*Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir.2010).  It is worth

noting that Ms. Baker continued her complaints about the actions of Mr. Dean after this

exhibition of hostility.  That alone is "not dispositive of the objective material-adversity

inquiry, [but] it does shed light as to whether the employer's actions are sufficiently

material and adverse to be actionable."  *Samuels v. Potter*, 372 Fed.Appx. 906, 908-09

(10th Cir. 2010) (internal quotation, alteration, and citation omitted).

C.  Ms. Baker was placed on paid leave and an ADA interactive
process was initiated, in retaliation for her report to the police on May 28, 2013.

Ms. Baker was placed on paid administrative leave on May 31, 2013, three days

after her report to the police concerning Mr. Dean on May 28, 2013.  At the time, Ms.

Baker contends,  Curt Pesicka, a city official, told Ms. Baker that she would be

terminated immediately because the city did not think Ms. Baker could perform her

duties because of her disabilities and health issues.  Ms. Baker then was told that she

was on administrative leave so the city could engage the ADA interactive process to

determine if she could do her job, with or without reasonable accommodation.  She was

given a letter to that effect.  *Motion for summary judgment* [#27], Exhibit D-1 [#27-3],

CM/ECF pp. 6-7 (letter concerning paid administrative leave).  Ms. Baker claims these

actions were taken in retaliation for her pursuing with the police her sexual assault

complaint against Mr. Dean.

In her EEOC Charge, Ms. Baker says that, at this point in time, she was not

requesting accommodations for her disability "and I was released back to work from by

doctor without accommodations being needed." *Motion for summary judgment* [#27],

Exhibit G [#27-6] CM/ECF pp. 4 - 6 (EEOC Charge) , CM/ECF p. 6.  In this context, this

retaliation claim can only be seen as retaliation based on gender discrimination tied to

the sexual assault reporting by Ms. Baker.  Absent some relevant request for accommodation of her disability at this time, this retaliation claim cannot reasonably be seen as tied to the disability of Ms. Baker or any request for accommodation.

This administrative leave was brief, ten days; Ms. Baker did not lose pay or other benefits; and she was returned to her former position at the end of the ten day administrative leave.  As discussed in Section IV, above, a brief paid administrative leave generally is not an adverse employment action, even in the context of a retaliation claim.  The paid ten day leave imposed on Ms. Baker explicitly was for the purpose of assessing the need for accommodation of Ms. Baker and her ability to do her job in light of her disability.  Once Ms. Baker said she needed no accommodation, she quickly was restored to her former position.  These facts do not demonstrate a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.  Rather, they show only a mere inconvenience and brief alteration of job responsibilities, followed by a restoration of the status quo.

### D.  Conclusion

Viewing the undisputed facts in the record in the light most favorable to Ms. Baker, no reasonable fact finder could find in favor of Ms. Baker on her retaliation claim. Thus, the defendant is entitled to summary judgment on the retaliation claim.

### VIII.  CONCLUSION & ORDERS

The defendant is entitled to summary judgment on the gender discrimination claim.  The plaintiff has not established a *prima facie* case of gender discrimination because the plaintiff has not shown that the defendant imposed an adverse employment action on the plaintiff.

The defendant is entitled to summary judgment on the disability discrimination

claim of the plaintiff.  The plaintiff has not established a *prima facie* case of disability discrimination because the plaintiff has not shown that the defendant failed to provide a reasonable accommodation to the plaintiff or that the defendant imposed an adverse employment action on the plaintiff.

The defendant is entitled to summary judgment on the retaliation claims of the plaintiff.  Viewing the facts in the record in the light most favorable to the plaintiff, no reasonable fact finder could find in favor of the plaintiff on her claims of retaliation.

To the extent the plaintiff attempts to assert bases for her gender discrimination claim or her disability discrimination claim which are not stated in her EEOC Charge, the defendant is entitled to summary judgment because such unexhausted claims may not be asserted in this civil suit.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **The City's Motion for Summary Judgment** [#27] filed August 31, 2015, is granted;

2.  That the claims of the plaintiff in her complaint [#1] are dismissed with prejudice;

3.  That the trial set to commence on January 25, 2016, and the telephone setting conference set for January 5, 2016, are vacated;

4.  That judgment with prejudice shall enter in favor of the defendant, the City and County of Denver, Office of Economic Development, and against the plaintiff, Brenda T. Baker;

5.  That the defendant is awarded its costs, to be taxed by the clerk of the court in the time and manner specified by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated January 5, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge